ORIGINAL

```
DEBRA W. YANG
United States Attorney
STEVEN D. CLYMER
Special Assistant United States Attorney
Chief, Criminal Division
JEFFREY A. BACKHUS
Assistant United States Attorney
(Cal. State Bar #200177)
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-4267
     Facsimile:  (213) 894-0141

Attorneys for Plaintiff
UNITED STATES OF AMERICA
```

FILED
CLERK, U.S. DISTRICT COURT
JUL 15 ?
CENTRAL DISTRICT OF CA...
BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. CR 04-615 CBM |
|---|---|
| Plaintiff, | ) |
| v. | ) PLEA AGREEMENT FOR DEFENDANT<br>) ANDREW K. PROCTOR |
| ANDREW K. PROCTOR, | ) |
| Defendant. | ) |

1.   This constitutes the plea agreement between defendant Andrew K. Proctor ("defendant") and the United States Attorneys' Offices for the Southern District of Florida and the Central District of California (collectively "the USAO") in the above-captioned case.  This agreement is limited to the USAO and does not bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### PLEA

2.   Defendant agrees to waive venue and plead guilty, pursuant to Federal Rule of Criminal Procedure 20, to Count I of the indictment filed in Case No. 02-80097 CR-Hurley in the

Southern District of Florida, which count charges the defendant with conspiracy to commit wire and securities fraud, in violation of Title 18, United States Code, Sections 371, 1343 and 1346 and Title 15, United States Code, Sections 78j(b) and 78ff. The government agrees to dismiss Count II of the indictment with respect to this defendant after sentencing. The government also agrees to dismiss the indictment with respect to this defendant in Case No. 02-80086-CR-HURLEY.

## NATURE OF THE OFFENSE

3. In order for defendant to be guilty of Count I of the indictment under Title 18, United States Code, Sections 371, 1343 and 1346 and Title 15, United States Code, Sections 78j(b) and 78ff, which charges a conspiracy to commit wire and securities fraud, the following must be true:

    a. Defendant (1) knowingly conspired with two or more persons; (2) to knowingly and willfully devise a scheme and artifice to defraud and deprive others of the intangible right of honest services; and (3) to obtain money and property by means of materially false and fraudulent pretenses, representations and promises; and (4) for the purpose of executing such scheme and artifice to defraud to transmit and cause to be transmitted, by means of wire communications interstate and foreign commerce, certain writings, signs, signals pictures and sounds

    b. defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

    c. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the

1  conspiracy; and
2           d.  Defendant and his co-conspirators directly or
3  indirectly, knowingly used and employed manipulative and
4  deceptive devices and contrivances in connection with the
5  purchase and sale of a security in contravention of rules and
6  regulations prescribed by the Securities and Exchange Commission
7  as necessary and appropriate in the public interest and for the
8  protection of investors.
9      Defendant admits that defendant is, in fact, guilty of this
10 offense as described in Count I of the indictment.

## PENALTIES

12      4.  The statutory maximum sentence that the Court can
13 impose for a conviction under Title 18, United States Code,
14 Section 371 is 5 years imprisonment, followed by a term of
15 supervised release of up to 3 years, and a fine of up to
16 $250,000, or twice the gross gain or gross loss resulting from
17 the offense, whichever is greatest.
18      5.  Defendant understands and acknowledges that, in
19 addition to any sentence imposed under paragraph 4 of this
20 agreement, a special assessment in the amount of $100 will be
21 imposed on the defendant.  The defendant agrees that any special
22 assessment imposed shall be paid at the time of sentencing.

## SUPERVISED RELEASE

24      6.  Supervised release is a period of time following
25 imprisonment during which defendant will be subject to various
26 restrictions and requirements.  Defendant understands that if
27 defendant violates one or more of the conditions of any
28 supervised release imposed, defendant may be returned to prison

for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

PROBATION/PAROLE/SUPERVISED RELEASE REVOCATION

7. Defendant understands that if defendant is presently on probation, parole, or supervised release in another case, the conviction in this case may result in revocation of such probation, parole, or supervised release.

FACTUAL BASIS

8. The USAO and defendant agree and stipulate to the following facts:

Defendant was the chairman, a director, and the chief financial officer of a company known as CT Cosmetics Inc. CT Cosmetics was to be traded under the symbol "CCHO."

Co-defendant Paul Lemmon was the managing director of Voyager Group Ltd. ("Voyager"), a member of the Bermuda Stock Exchange. Voyager managed a mutual fund called the Voyager Select IPO Fund Ltd.

Beginning in or about August 2000, an agent of the Federal Bureau of Investigation, acting in an undercover capacity, posed as a corrupt securities trader for a fictitious stock mutual fund on behalf of a number of investors who had invested approximately $800 million in the fund. The mutual fund, supposedly located in England, was represented in the United States by a company called Connelly and Williams, in Atlanta, GA.

///
///
///

Two cooperating witnesses posed as corrupt stock promoters and consultants who presented prospective stock deals to the undercover agent's mutual fund.

On or about September 18, 2000, defendant represented to the cooperating witnesses and the undercover agent that Voyager Securities Initial Public Offering Fund would "purchase" three million shares of CT Cosmetics from Voyager for $1.00 per share, and resell those shares to the undercover agent's mutual fund at a profit. Defendant agreed to pay the undercover agent and the cooperating witnesses 50% of the total sales price for inducing the agent's mutual fund to purchase the shares. The defendant understood that said fee or "kickback" could not be disclosed to the mutual fund.

In a "test transaction," the agent's fictitious mutual fund purchased $25,000 of CT Cosmetics stock. Of this sum, defendants returned $20,000 to the undercover agent ostensibly to pay off the "due diligence" officers of Connelly and Williams to put the company "on the books" of the mutual fund.

However, as a condition of the sale of three million shares, the undercover agent informed defendant that CT Cosmetics had to be registered with the Securities and Exchange Commission as a publicly traded company. CT Cosmetics did not meet the requirements for registration and thus it was impossible for CT Cosmetics to become a publicly traded company. Accordingly, it was impossible to consummate the contemplated sale of three million shares of CT Cosmetics to the agent's fictitious mutual fund.

///

## WAIVER OF CONSTITUTIONAL RIGHTS

9. By pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to the assistance of counsel at trial, including, if defendant could not afford an attorney, the right to have the Court appoint one for defendant.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

    f. The right, if defendant wished, to testify on defendant's own behalf and present evidence in opposition to the charge, including the right to call witnesses and to subpoena those witnesses to testify.

    g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

By pleading guilty, defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

///
///
///
///

SENTENCING FACTORS

10. Defendant understands that the Court is required to consider and apply the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") but may depart from the Sentencing Guidelines under some circumstances. Defendant and the USAO agree and stipulate that:

   a. Sentencing Guidelines § 2F1.1 of the 1998 Sentencing Guidelines manual shall apply to determine the offense level for defendant's conviction under the single count of the Indictment.

   b. The United States and defendant agree to recommend to the Court that the loss amount under § 2F1.1 of the Sentencing Guidelines (1998 version) was more than $20,000 but less than $40,000.

11. Defendant and the USAO agree and stipulate that the offense level for defendant's conviction under the single count of the information shall be determined as follows:

| | | |
|---|---|---|
| Base Offense Level | 6 | U.S.S.G. § 2F1.1 |
| Specific Offense Characteristics | | |
| Loss Exceeding $20,000 But Less Than $40,000 | +4 | U.S.S.G. § 2F1.1(b)(1)(N) |
| More than Minimal Planning | +2 | U.S.S.G. § 2F1.1(b)(2) |
| Adjustments | | |
| Acceptance Of Responsibility | -2 | U.S.S.G. § 3E1.1 |
| Total Offense Level | 10 | |

The government will recommend a two-level reduction in the applicable sentencing guideline offense level pursuant to U.S.S.G. § 3E1.1 only if defendant demonstrates an acceptance of responsibility up to and including the time of sentencing.

12. Defendant and the USAO each reserve the right to oppose any departure sought by the other party.

13. The parties agree that no specific offense characteristics or adjustments apply other than those specifically enumerated in paragraph 11 above, and the parties agree not to argue or suggest that any specific offense characteristics or adjustments of any kind, other than those specifically enumerated in paragraph 11, should be imposed. Notwithstanding the foregoing sentence, the USAO reserves the right to seek an upward adjustment based on obstruction of justice under U.S.S.G. § 3C1.1, if defendant commits an act after signing this agreement but prior to sentencing, or the USAO discovers a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1.

14. There is no agreement as to defendant's criminal history or criminal history category.

15. The stipulations in this agreement do not bind either the United States Probation office or the Court. The Court will determine the facts and calculations relevant to sentencing. Both defendant and the USAO are free to: (a) supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court,

(b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing calculations are not error, although each party agrees to maintain its view that the calculations in paragraphs 10 and 11 are consistent with the facts of this case.

## DEFENDANT'S OBLIGATIONS

16.  Defendant agrees:

    a.  To plead guilty as set forth in this agreement.

    b.  To abide by all sentencing stipulations contained in this agreement.

    c.  To (i) appear as ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

    d.  Not to commit any crime.

    e.  To be truthful at all times with the United States Pretrial Services Office, the United States Probation Office, and the Court.

    f.  To pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

## THE USAO'S OBLIGATIONS

17.  If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

    a.  To abide by all sentencing stipulations contained in this agreement.

    b.  The United States agrees that it will recommend at

sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the applicable guideline range. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to sentencing; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release or of this plea agreement, or making false statements or misrepresentations to any governmental entity or official.

      c.   At the time of sentencing, to dismiss Count II of the indictment with respect to this defendant.

      d.   At the time of sentencing, to dismiss the indictment with respect to this defendant in Case No. 02-80086-CR-HURLEY.

BREACH OF AGREEMENT

18.  If defendant, at any time between the execution of this agreement and the later of (a) defendant's sentencing on a non-custodial sentence, or (b) defendant's surrender for service of a custodial sentence, violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the

USAO may declare this agreement breached. If the USAO declares the agreement breached, and the Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all its obligations under this agreement. In particular, the USAO will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty.

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19. Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above, (b) the Court does not depart upward in offense level or criminal history category, and (c) the Court determines that the total offense level is 10 or below and imposes a sentence within the range corresponding to the determined total offense level. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statute of conviction.

20. The USAO gives up its right to appeal the Court's Sentencing Guidelines calculations, provided that (a) the Court does not depart downward in offense level or criminal history
///

category, and (b) the Court determines that the total offense level is 10 or above.

## SCOPE OF AGREEMENT

21. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

22. This agreement applies only to crimes committed by defendant, has no effect on any proceedings against defendant not expressly mentioned herein, and shall not preclude any past, present, or future forfeiture actions.

## NO ADDITIONAL AGREEMENTS

23. Except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's counsel. Nor may any additional promise,

///
///
///
///
///

understanding, agreement, or condition be entered into unless in a writing signed by all parties or on the record in court.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT OF FLORIDA

MARCOS DANIEL JIMENEZ
United States Attorney


_____     _____
ROGER H. STEFIN                 Date
Assistant United States Attorney


UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DEBRA W. YANG
United States Attorney


_____     _____
JEFFREY A. BACKHUS              Date
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. Furthermore, I sign this agreement under penalty of perjury, and thereby state that all facts contained in this agreement, including the facts set forth in paragraphs 8 (Factual Basis) and 10 and 11 (Sentencing Factors), are true and correct. My attorney has advised me of my rights, of possible defenses, of the Sentencing

Guidelines provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____  
ANDREW K. PROCTOR  
Defendant

Date 5/16/04

I am Andrew K. Proctor's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____  
ELLYN S. GAROFALO  
Liner Yankelevitz Sunshine & Regenstreif LLP  
Attorneys for Defendant  
Andrew K. Proctor

Date 5/10/04

understanding, agreement, or condition be entered into unless in a writing signed by all parties or on the record in court.

    This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE SOUTHERN DISTRICT OF FLORIDA

MARCOS DANIEL JIMENEZ
United States Attorney

_____      4/19/04
ROGER H. STEFIN      Date
Assistant United States Attorney


UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

DEBRA W. YANG
United States Attorney

_____      7/15/04
JEFFREY A. BACKHUS      Date
Assistant United States Attorney


    I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. Furthermore, I sign this agreement under penalty of perjury, and thereby state that all facts contained in this agreement, including the facts set forth in paragraphs 8 (Factual Basis) and 10 and 11 (Sentencing Factors), are true and correct. My attorney has advised me of my rights, of possible defenses, of the Sentencing